**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ROYAL AMERICAN MANAGEMENT,
INC., HOUSING PARTNERS OF
GAINESVILLE, FL., LTD.,
RESERVE AT KANAPAHA II, LTD.,
HUNTERS RUN APARTMENTS, LTD.,
and ALACHUA APARTMENTS, LTD.,**

       **Plaintiffs,**

**v.**                              **Case No. 1:15cv151-MW/GRJ**

**WCA WASTE CORPORATION,
WCA OF FLORIDA LLC,**

       **Defendants.**

_____/

**ORDER DENYING DEFENDANTS' MOTION TO REMAND
OR DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

A well-known contract case presented the issue, "what is chicken?" *See*

*Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117

(S.D.N.Y. 1960) (Friendly, J.).  In terms of jurisdiction, this case seemingly

presents a more difficult question: did the chicken or the egg come first?  The

causality dilemma arises here from the potential collision of two concepts in circuit

precedent.  Fortunately they avoid each other, if just barely.

This is a proposed state-law class action.  Defendants removed the case from the state court where it was filed but now challenge this Court's subject-matter jurisdiction.  Defendants seek either a remand of the case to state court or dismissal.  Defendants say that the only Plaintiff in the initial complaint in state court lacked standing under Article III of the Constitution and, for that reason, that initial Plaintiff lacked the ability to file an amended complaint in this Court adding Plaintiffs who *do* have Article III standing.  Defendants rely primarily on *Summit Office Park v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981), for that contention.  Understandably vexed, Plaintiffs point to a line of cases holding that where a plaintiff amends a complaint under Federal Rule of Civil Procedure 15 (as of right in those cases), jurisdiction (and thus, standing) is determined from the amended complaint, not the original complaint.  *See Blue Marine Shipping SA de CV v. Gulmar Offshore Middle E. LLC*, No. 309CV555/MCR/MD, 2010 WL 1687737, at *4 (N.D. Fla. Apr. 26, 2010) (Rodgers, J).[1]  So which comes first, the chicken (a plaintiff without Article III standing improperly trying to amend a complaint) or the egg (determining jurisdiction based on only the amended complaint)?  Thankfully, constitutional principles of jurisdiction are based on

---

[1]  Plaintiffs indirectly assert in footnotes that the initial Plaintiff *does* have Article III standing.  ECF No. 49, at 14 nn. 7 & 8.  Unfortunately the point is not well developed.  So this Court will assume that the initial Plaintiff does not have Article III standing.

reason and good sense, and so this Court need not discover the origins of the universe.

For the reasons that follow, this Court concludes that Article III does not forbid the use of the rules of procedure to bring the proper parties to an actual controversy before the Court.  *See Mullaney v. Anderson*, 342 U.S. 415, 417 (1952).  As perfected Article III standing at the outset is not a necessary precondition, it was proper for the initial plaintiff to amend its complaint under Rule 15 with Defendants' written consent and consistent with this Court's scheduling order.  The joinder of the additional Plaintiffs was also proper under Rule 17(a)(3) and Rule 21.  This Court also rejects Defendants' secondary argument that the derivative-jurisdiction doctrine requires dismissal.  This order denies the motion to dismiss or remand.

## I

On June 17, 2015, Royal American Management, Inc. ("Royal American"), brought a proposed class action in state court against WCA Waste Corporation and WCA of Florida, LLC ("Defendants"), which provide waste-disposal services. ECF No. 1-1.  The lawsuit concerned two fees charged by Defendants: a "fuel surcharge" and an "environmental fee."  *Id*.  The initial complaint asserted that charging these fees was a violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq*., Florida Statutes, and a breach of a uniform

contract between each proposed class member and Defendants.[2]  Royal American alleged that it paid these fees to Defendants.  ECF No. 1-1, ¶ 6.  But attached to the initial complaint was a service agreement between Defendants and "Reserve at Kanapaha I," which did not mention Royal American.  ECF No. 1-1, at 24. Defendants received service of process on June 24, 2015, and July 10, 2015, respectively.  ECF No. 1-1, at 39–45.

On July 23, 2015, Defendants removed the case to this Court.  ECF No. 1. The notice of removal invoked this Court's original jurisdiction under the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d).  But the notice cited the general removal statute, 28 U.S.C. § 1441(a) for its venue provision, and did not cite the CAFA removal statute, 28 U.S.C. § 1453(b).

Royal American and Defendants submitted a scheduling report in which they agreed to allow for a period to amend pleadings and join parties.  ECF No. 9. But Defendants wanted a longer period of discovery (ending in March 2017) and a shorter period of time to amend pleadings and join parties (giving Plaintiff until January 4, 2016).  *Id*. at 1.  The scheduling order set discovery to close on June 1, 2016, and gave Plaintiff until March 4, 2016, to amend pleadings or join parties without leave of court.  ECF No. 15, at 1–2.

---

[2] The complaint alleged two different classes:  a FDUTPA class and a contract class.  ECF No. 1-1 ¶¶ 13, 14.

Defendants answered the initial complaint on August 5, 2015.  ECF No. 5 &
6.  Royal American filed its first amended complaint on August 31, 2015.  ECF
No. 8.  Defendants answered on September 15, 2015.  ECF No. 11 & 12.

Two months later, on November 25, 2015, Royal American along with four
other Plaintiffs filed a second amended complaint.  ECF No. 35.  This order refers
to these four other Plaintiffs as "apartment entities."  The first additional Plaintiff
is Housing Partners of Gainesville, FL, Ltd. ("Housing Partners").  According to
the second amended complaint, Housing Partners' only asset is the *Reserve at
Kanahapa I* apartment complex.  *Id.* ¶ 8.  It appears that a Royal American
employee signed the service agreements with Defendants as the apartment entities'
agent.  Royal American made payments to Defendants, but the money came from
the apartment entities.  It appears that Defendants knew full well that the payments
ultimately came from the apartment entities.

On December 9, 2015, Defendants moved to remand the case to state court
or dismiss the case.  ECF No. 44.  Defendants say that Royal American never had
standing to sue them.  *Id.* at 10.  They assert that Royal American did not fix this
supposed jurisdictional defect by amending the complaint to add the apartment
entities as Plaintiffs.  *Id.* at 14.  Finally, they argue that the state court never had
subject-matter jurisdiction and so the case should be dismissed under the doctrine
of derivative jurisdiction.  *Id.* at 17.

II

All agree that an actual controversy exists between the apartment entities and Defendants.  The Constitution and federal statutes grant this Court original jurisdiction over this sort of controversy.  The case is now here with the consent, at one time or another, of all parties who have appeared.  It appears undisputed that Royal American and the apartment entities have a close relationship.  And the Federal Rules of Civil Procedure, which provide numerous mechanisms for claims to be brought before a district court, are "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  So it would be an odd result indeed if some authority compelled this Court to remand or dismiss this case for lack of subject-matter jurisdiction.  The following analysis explains why this case need not be dismissed for lack of subject-matter jurisdiction.

A

A party pressing a claim in federal court has many hurdles to jump over.  At least four are relevant to Defendants' argument that Royal American lacked standing and that problem cannot be fixed.

The first is the concept of standing under Article III of the Constitution, which gives federal courts the power to decide "Cases" and "Controversies."  The justiciability doctrines of standing, ripeness, and mootness—which limit Article

III—exist because "[f]ederal courts may not decide questions that cannot affect the rights of litigants in the case before them." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (U.S. 2013) (quotation omitted).

A plaintiff establishes standing by demonstrating: (1) an actual and imminent injury that is concrete and particularized, not conjectural or hypothetical; (2) a causal connection between the injury and conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant, not the result of some third party not before the court; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "These requirements are the irreducible minimum required by the Constitution for a plaintiff to proceed in federal court." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quotation omitted). To invoke federal jurisdiction, a plaintiff must demonstrate that he possesses a "personal stake" in the outcome of the action. *See Camreta v. Greene*, 131 S. Ct. 2020, 2028 (U.S 2011).

The second concept is the specific grants of subject-matter jurisdiction under Article III. The "judicial Power of the United States" does not extend to all "Cases" and Controversies." That is, there must be a statute granting a federal court jurisdiction under one of the Article III grants of subject-matter jurisdiction. The most commonly used statutory grants of federal jurisdiction are found in 28

U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity jurisdiction).
*See also* U.S. Const. art III, § 2.

The third concept is that, in addition to the Article III jurisdictional floor, the Supreme Court has imposed "prudential" limitations on standing. One of these is the prohibition against third-party standing. That is, "even when the plaintiff has alleged injury sufficient to meet the case or controversy requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quotation omitted). There are exceptions. *See e.g.*, *Craig v. Boren*, 429 U.S. 190, 194 (1976); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459–60 (1958). But the Supreme Court has recently indicated that "prudential" standing requirements are either constitutional limits or a description of the cause of action, rather than a limit on jurisdiction. In *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (U.S. 2014), though, the Court declined to address whether the rule against third-party standing is a constitutional limit. *Id*. at 1387 n.3.

The fourth concept is that, under Federal Rule of Civil Procedure 17(a), "[a]n action must be prosecuted in the name of the real party in interest." "The purpose of the real party in interest rule is to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally

that the judgment will have its proper *res judicata* effect." *Elandia Int'l, Inc. v. Koy*, No. 09-20588-CIV, 2010 WL 2179770, at *4 (S.D. Fla. Feb. 22, 2010).

Although Article III standing, Article III and statutory grants of subject-matter jurisdiction, prudential standing, and real party in interest requirements are similar and closely related, they are conceptually distinct. *Id.* (citing numerous authorities). The first two are jurisdictional. The third might be. The fourth is not.

B

Turning to this case, the issue is whether this Court lacks jurisdiction. The answer is no.

Defendants cite *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263 (11th Cir. 2003), for the proposition that "Article III standing must be determined as of the time at which the plaintiff's complaint is filed, *id.* at 1275, and, in the case of removal, a district court must ensure standing at that time. ECF No. 44, at 14. Those are correct statements of the law, so far as they go. But the unremarkable point that the Eleventh Circuit was making is that "standing is to be assessed under the *facts* existing when the complaint is filed," not what is pled in the original complaint, frozen for all time. *See id.* (quoting *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n. 3 (1st Cir.2000) (quotation omitted and emphasis added)). There is no categorical bar to changes to the pleadings to allege facts existing at the commencement of the suit (or at the time of removal) which would

9

establish standing. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3 (6th ed. 2012) (noting that after the Supreme Court found a lack of standing in *Sierra Club v. Morton*, 405 U.S. 727 (1972), and remanded the case, the plaintiff amended its complaint to allege that its members used the park).

For their argument about Royal American's ability to amend its complaint, Defendants rely primarily on *Summit Office Park v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981).[3]  In that case the initial plaintiff, an indirect purchaser of certain products, brought a proposed antitrust class action. *Id*. at 1280.  Four years later, while that case was pending and "dormant," the Supreme Court held that indirect purchasers could not maintain an action under federal antitrust laws. *Id*. [4] Just before the *Summit Office* district court granted summary judgment for the defendants on that basis, the initial plaintiff tried to file an amended complaint adding two direct purchasers as plaintiff-representatives of a new class of direct purchasers and changing the cause of action to conform to the intervening Supreme Court decision. *Id*. at 1281.  The district court granted summary judgment for the defendants as to the indirect purchasers and struck the amended complaint after

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[4]  The intervening Supreme Court case on this point is *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

treating it as a motion for leave to amend. *Id*. at 1281–82.  All of the plaintiffs appealed, asserting a right to amend the complaint or that the district court erred in denying leave.

The Fifth Circuit described the circumstances as "special" and "unique." *Id*. at 1282.  It held that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Id*.  The court explained that the "[p]laintiff had no identity of interest with either the new proposed plaintiffs, or the new class named in the complaint, or their cause of action." *Id*.  So the plaintiff "had no standing to assert a claim, it was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action." *Id*. at 1282–83.  Judge Wisdom dissented, arguing that "an otherwise valid claim can properly be brought before the court through any procedure not violative of the letter of the Rules." *Id*. at 1287 (Wisdom, J., dissenting).

It may be unfair to view *Summit Office* as addressing Article III standing. The court based its reasoning on the statement that "neither the original plaintiff nor the putative class could obtain relief under any available legal theory." *Summit Office*, 639, F.2d at 1284 n.11.  Standing, as explained above, turns on an asserted injury-in-fact (say, an economic harm like paying too much for steel) caused by the

defendant and capable of redress by a favorable decision on the merits.  The

availability of a legal theory goes towards the merits of a controversy, not the

existence of one.  *See Delta Coal*, 743 F.2d at 855.  It does appear that the *Summit*

*Office* district court granted summary judgment on the substance of the indirect

purchaser antitrust claim and did not dismiss the claim for lack of jurisdiction, a

decision on the merits which the court of appeals affirmed.  639 F.2d at 1282.  It

well may be that *Summit Office* reflects little more than the proposition that

lawyers cannot use a failed lawsuit as a shell vehicle for a completely different and

totally unrelated dispute.

　　　*Summit Office* is, of course, susceptible to a broader interpretation.  Some

other courts have adopted such a view.  Considering Rule 17(a), the Sixth Circuit

held that where the plaintiff "admittedly has not suffered injury in fact by the

defendants, it had no standing to bring this action and no standing to make a

motion to substitute the real party in interest."  *Zurich Ins. Co. v. Logitrans, Inc.*,

297 F.3d 528, 531 (6th Cir. 2002).  A leading treatise on federal courts has

described such an approach as "particularly troubling" as "a focus on standing may

lead a court to refuse application of the ameliorating rules that enables substitution

of the real party in interest when the wrong plaintiff filed the action."  13A Charles

Alan Wright et al., *Fed. Prac. & Proc. Civ*. § 3531 & n. 61 (3d ed. 2014).  But at

least one contemporary commentator noted that "[a] narrow reading of the [*Summit*

*Office*] court's rule would take away a plaintiff's standing to amend only when the plaintiff, the class, and the cause of action are simultaneously changed."  Daniel R. Ross, *Summit Office Park, Inc. v. United States Steel Corp.: Rule 15(a) and "Standing to Amend,"* 69 Va. L. Rev. 205, 216 (1983).

The Eleventh Circuit took a similarly narrow view of *Summit Office* in *Delta Coal Program v. Libman*, 743 F.2d 852 (11th Cir.1984), where a partnership was the original plaintiff.   The district court concluded that the partnership could not assert its claims.  The investors in the partnership moved to substitute themselves as plaintiffs and, after the district court's approval, filed an amended complaint asserting the same claims against the defendants.  *Id*. at 854.  On appeal the defendants asserted that the district court lacked subject-matter jurisdiction over the investors' claims against them.  *Id*.

The Eleventh Circuit concluded that "[a] district court does not exceed its power when it takes *jurisdiction* over a controversy, even if not brought by the real party in interest, as long as there exists a substantial identity of interest between the original plaintiff and the true party in interest, and as long as the pleadings set forth the facts upon which the real party would base its invocation of the court's jurisdiction in its own right."  *Id*. at 856 (emphasis added).   To be sure, the court said that the partnership had Article III standing as the representative of the investors.  So the court's jurisdictional analysis concerned the special statutory

grants of federal subject-matter jurisdiction.  But the court distinguished *Summit Office*, explaining that, in contrast to *Summit*, Rule 17(a) "was intended to extend to precisely this kind of situation," where "the operative facts and the cause of action are not changed, but only the formally named plaintiff."  743 F.2d at 856 n.6.

This case is much the same.  Royal American did not attempt to add a new class, and a new cause of action.  The operative facts and cause of action have not changed.  The only difference is the formally named Plaintiffs.  Royal American has "such an identity of interest" with the apartment entities that their claims have "functionally been before" both the state court and this Court.  *See id*.

Putting aside *Summit Office* and *Delta Coal*, on the precise point of contention, the controlling case is *Mullaney v. Anderson*, 342 U.S. at 415.  In the Supreme Court the defendant challenged the plaintiffs' standing to maintain the suit.  *Id*. at 416.  The plaintiffs moved for leave to add as parties two members of the organizational plaintiff.  *Id*.  Considering Rule 21,[5] the Court said this:

> To grant the motion merely puts the principal, the real party in interest, in the position of his avowed agent. The addition of these two parties plaintiff can in no wise embarrass the defendant. Nor would their earlier joinder have in any way affected the course of the litigation. To dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration—the more so since, with the silent concurrence

---

[5]   It provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.

of the defendant, the original plaintiffs were deemed proper parties below.

*Id*. at 417.  The case thus involved both the original plaintiffs asking for the relief of adding plaintiffs to establish standing and the Court granting it without establishing that the present plaintiffs had Article III standing.

The Court later said that *Mullaney* "cannot be explained as a case involving a technical change to identify the real parties in interest. The addition of the [additional plaintiffs] was considered *necessary to establish the existence of a justiciable case*."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 834 n.8 (1989) (emphasis added).  For the power of the appellate court to take such action under a rule governing district courts, the *Newman-Green* Court cited Justice Story's explanation that "the course of the common law" allowed "the superior court [to] make such amendments, as the court below may."  490 U.S. at 834 (quoting *Anonymous*, 1 F. Cas. 996, 997 (No. 444) (C.C. Mass. 1812) (Story, J.)).

The inevitable conclusion from *Mullaney* and *Newman-Green* is that "the court below"—here, this Court—may also allow for the addition of the apartment entities as Plaintiffs without establishing that Royal American has Article III standing.[6]  The point is that "a court sometimes may constitutionally exercise

---

[6]  This Court has not overlooked that the Eleventh Circuit has applied a broader reading of Summit Office.  *See Wright v. Dougherty Cty., Ga.*, 358 F.3d 1352, 1356 (11th Cir. 2004); *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988).  But neither of those cases addressed *Mullaney* or *Delta Coal*.  So they are of limited value on this point.

jurisdiction over a case even though it does not secure solid jurisdictional footing until after the case has been brought." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95 (1st Cir. 2008). "Defendants' claim that one cannot amend a nonexistent action is purely formal, in the light of the wide and flexible content given to the concept of action under the new rules." *Summit Office*, 639 F.2d at 1287 (Wisdom, J., dissenting) (quoting *Hackner v. Guaranty Trust Co.*, 117 F.2d 95, 98 (2d Cir. 1941)). It is not an expansion of jurisdiction, *see* 28 U.S.C. § 2072; Fed. R. Civ. P. 82, to use Rule 15, 17, or 21 in this manner. Rather it is "the wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense of requiring an action to be started anew where a substitution is desired though the subject matter of the actions remains identical." *See Park B. Smith, Inc. v. CHF Industries Inc.*, 811 F. Supp. 2d 766, 774 (S.D.N.Y. 2011) (quotation omitted).

## C

A straight-forward application of the Rules shows that the addition of the apartment entities as Plaintiffs was proper. Under Rule 15, after a party has amended as of right that party "may amend its pleading only with the opposing party's written consent or the court's leave." Defendants gave written consent through the scheduling report. And this Court granted leave in its scheduling order. Likewise, substitution or joinder of the real party in interest was proper

under Rule 17(a)(3).[7][8]  It is worth noting, too, that Defendants arguments are directed solely at jurisdictional requirements; they do not assert that they are prejudiced by the addition of these Plaintiffs in any way.

The effect of the second amended complaint is this: "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary."  *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007).  Rule 15 thus directs a district court "to evaluate an action (including its jurisdictional predicate) by reference to the amended complaint instead of the original complaint."  *See, e.g.*, *Connectu LLC*, 522 F.3d at 95; *e.g.*, *Blue Marine*, 2010 WL 1687737, at *6 (holding that a valid amendment to a complaint "now controls making it unnecessary to determine whether [the original plaintiff] had standing" under the original complaint).  This is so whether or not the case is originally brought in federal court or removed, though the removing party has the

---

[7]  Under Rule 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."

[8] It is a fair point that a plaintiff lacking standing should not be able to control the litigation by amending a pleading.  But the amendment here is not just the action of Royal American.  It is also the affirmative act of the apartment entities asserting the same claims as their own.  While it might have been better for those Plaintiffs to file a formal motion for substitution rather than just an amended complaint asserting their claims personally (as the investors did in *Delta Coal*) that is not a problem of jurisdictional significance.  To the extent it is necessary for this Court to enter an order under Rule 17 or 21 adding the apartment entities, this order expressly does so.

burden to establish subject-matter jurisdiction (say, under § 1332) and reference to its materials is proper.  The result is that the second amended complaint "became the operative pleading by operation of law *before* any jurisdictional challenge was mounted." *Connect U LLC*, 522 F.3d at 95.  And the apartment entities have standing to bring their claims under the second amended complaint.

For these reasons, the motion to remand or dismiss this action for lack of subject-matter jurisdiction is due to be denied.

## III

Defendants' secondary argument for dismissal is that the state court never had subject-matter jurisdiction of Royal American's claims and the derivative-jurisdiction doctrine "precluded this Court from assuming removal jurisdiction based on the Class Action Fairness Act, 28 U.S.C. § 1453."  ECF No. 44, at 18.  Recognizing that the derivative-jurisdiction doctrine has been abolished by statute in the general removal statute, § 1441(f), Defendants say it survives in other removal statutes, such as the federal officer removal statute (28 U.S.C. § 1442) or the class action removal statute, § 1453.

Before addressing this argument it is worth noting that it rests on a flawed premise.  As explained above, the substitution of real parties in interest through the second amended complaint automatically replaced the initial complaint in state court.  *See also* Fed. R. Civ. P. 17(a)(3) (providing that "[a]fter ratification,

joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest).  As a matter of law the state court was not deprived of jurisdiction for any lack of Article III standing on the part of Royal American.

Assuming that (1) the state court *lacked* jurisdiction; (2) Defendants removed this action under § 1453 (perhaps an arguable point given that the notice of removal cites § 1441(a) and does not mention § 1453); and (3) that the derivative-jurisdiction doctrine applies to § 1453 removals, there is still no defect in this Court's subject-matter jurisdiction.  First, there is no such thing as removal *jurisdiction*.  Federal district courts have original jurisdiction over certain cases.  Removal is a way to bring those cases to a federal district court having original jurisdiction.  *See Rodas v. Seidlin*, 656 F.3d 610, 623 (7th Cir. 2011).  Second, "the doctrine of derivative jurisdiction, notwithstanding its perhaps improvident name, is a procedural bar to the exercise of federal judicial power.  It is not an essential ingredient for a court's subject matter jurisdiction."  *Id*. at 625; *Calhoun v. Murray*, 507 F. App'x 251, 256 (3d Cir. 2012) (following *Rodas*); *Foval v. First Nat. Bank of Commerce in New Orleans*, 841 F.2d 126, 129 (5th Cir. 1988) (reaching the same conclusion).

Defendants assert that in *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350–51 (5th Cir. 2014), the court of appeals determined "that a case should be dismissed

for lack of subject matter jurisdiction pursuant to the derivative-jurisdiction doctrine." ECF No. 44, at 2 n.1.  That is not correct.

In *Lopez*, the plaintiff brought claims against his employer in state court arising out of a workplace injury.  The employer was a contractor for a federal agency.  The employer sought contribution and indemnification against the federal government under the Federal Tort Claims Act.  The government removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a).  The *next day*, the government moved to dismiss for lack of jurisdiction under the derivative-jurisdiction doctrine.  The district court ultimately concluded that "when the [derivative jurisdiction] doctrine is raised *promptly* upon removal prior to adjudication of the merits, the doctrine must be invoked to limit the federal court's jurisdiction, if any, to that of the state court." *Id.* at 349 (emphasis added).  Nevertheless the district court concluded that there were no claims over which it had original jurisdiction and so the remaining state law claims had to be remanded to state court.  *Id.*  Alternatively, the district court held that even if it could exercise supplemental jurisdiction under 28 U.S.C. § 1367, it declined to do so.

On appeal, the Fifth Circuit affirmed the dismissal of the FTCA claims under the derivative-jurisdiction doctrine.  *Id.* at 351.  But because the employer waived any claim of error as to the district court's alternative holding regarding supplemental jurisdiction, the Fifth Circuit declined to address whether the district

court was correct in its conclusion that the derivative jurisdiction doctrine was a jurisdictional rather than procedural bar.  *Id.* at 352.

The *Lopez* panel did not distinguish the Fifth Circuit's earlier decision in *Foval*, which seemed to treat the issue of derivative jurisdiction as a waivable procedural defect.  *Foval*, 841 F.2d at 129.  But in any event, this Court finds the reasoning in *Rodas* persuasive on this point: the derivative-jurisdiction doctrine is only a procedural bar.

Under either § 1441(a) or § 1453(b) removals, the process in 28 U.S.C. § 1447(c) applies to procedural objections of this sort: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  Defendants removed this case nearly 5 months before moving to remand or dismiss.  The time set by statute for Defendants to raise this procedural objection to their own removal has come and gone.  The case will not be remanded or dismissed on that basis.

Accordingly,

**IT IS ORDERED**:

Defendants' motion to dismiss or remand, ECF No. 44, is **DENIED**.

**SO ORDERED on January 4, 2016.**

s/Mark E. Walker_____
**United States District Judge**

21