UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

HUNTERS RUN APARTMENTS,
LTD., ALACHUA APARTMENTS
LTD., and BYZCAFEBAR, INC.,

   *Plaintiffs*,

v.         CASE NO. 1:15CV151-MW/GRJ

WCA WASTE CORPORATION,
ET AL.,

   *Defendants*.
_____/

**ORDER GRANTING MOTION TO SEAL**

   In 2012, San Francisco passed a law limiting the number of dogs that commercial dog walkers could walk on city park property to eight. *See* S.F., Cal. Health Code art. 39, §3907(a) (2015). As one citizen testified at a committee hearing on the law, "[s]ome (dog walkers) can manage larger groups, but others cannot." Chris Roberts & Lisa Fernandez, *San Francisco Dog Walkers Limited to 8 Dogs at a Time*, NBCBayArea.com (July 2, 2013), http://www.nbcbayarea.com/news/weird/New-Rules-For-SF-Dog-Walkers-Go-Into-Effect-Today-213899821.html. The abilities of the average dog walker undoubtedly played into the choice of the number eight,

1

but presumably the lawmakers also picked that number based on some assumptions about the average dog's level of obedience and corrigibility—eight typical dogs could be kept under control by a well-trained professional dog walker, in the eyes of the lawmakers. Of course, not all dogs are typical, and there have undoubtedly been cases in which eight dogs have proved too much for one walker to handle.

There is no similar limit on this Court's caseload—this Court must walk all the dogs it is given, so to speak. When lawyers litter the docket with petty (and eminently resolvable) discovery disputes and fill their papers with unnecessary attacks on each other, it makes it hard to keep the other dogs on the right track. A few yappy, ill-tempered pups can really make it hard for even the most dedicated walker (or, in this case, Walker).

Case in point: Plaintiffs filed some documents that Defendants claim should have been filed under seal. The parties conferred, and Plaintiffs apparently agreed that the documents should be sealed. *See* ECF No. 157, at 6. So what happened next? Did the parties file a short consent motion to seal the documents, stating simply that they should have been filed under seal in the first place? Of course not—why pass up an opportunity to try to make

the other side look bad? Defendants filed an unnecessarily long motion to seal implying, though not stating, that Plaintiffs had acted either in bad faith or negligently in failing to file the documents under seal in the first place. *See id.* at 2–4. Plaintiffs responded—which is in and of itself odd, given that Defendants' motion was a consent motion—by saying (1) the documents were not technically designated as confidential when they were turned over (though Defendants did "ask[] that they be treated as such when they were initially produced"), (2) there was really no reason to seal these documents, but (3) they were OK with sealing them anyway. ECF No. 158, at 1–2.

These two filings exemplify everything that is wrong with the lawyers' conduct in this case. Even non-disputes generate multiple filings, and each filing is treated as an opportunity to cast aspersions on the other side. If Congress were to set a limit on the number of cases a single federal judge could handle, this would not be the typical case it would have in mind when setting that number—this case is a bad dog, driven to disruptive behavior by incorrigible lawyers.

Any dog owner knows that positive reinforcement—rather than punishment—is the best way to train dogs. Lawyers are different, which is why Rule 11[1] of the Federal Rules of Civil Procedure and 28 U.S.C. §1927[2] exist. The parties are warned that any further pointless yapping may lead to the equivalent of a stern "bad dog." If the parties wish to bark at each other over legal irrelevancies, they can do so off the docket.

The motion to seal, ECF No. 157, is **GRANTED**. The Clerk shall seal ECF No. 155-3.

**SO ORDERED on June 29, 2016.**

**s/Mark E. Walker**
**United States District Judge**

---

[1] "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

[2] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."